**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| In re:                              |                          |
|-------------------------------------|--------------------------|
| **MICHAEL REDDINGTON**, Debtor      | Chapter 11<br>Case No. 11-19487- JNF |

**MOTION OF DEBTOR-IN-POSSESSION TO SELL REAL PROPERTY**
**OF THE ESTATE FREE AND CLEAR OF LIENS AND INTERESTS**
**(Re: 304-310 Western Ave, Cambridge, MA)**

Michael Reddington, Debtor-in-Possession in the above-referenced bankruptcy proceedings, hereby moves under Bankruptcy Rule 6004(c) and Local Rule 6004-1 for authority to sell the bankruptcy estate's interest in and to real property located at 304-310 Western Ave, Cambridge, MA (the "Property"), free and clear of liens and interests and in support hereof respectfully states that:

1. The Debtor is the owner of a joint interest in the Property.

2. The other joint owner is the Debtor's spouse, Anne Reddington.

3. Anne Reddington is a debtor in a chapter 7 case pending before this Court as Case No. 11-12446-JNF.

4. Lynne Riley (the "Trustee") is chapter 7 Trustee for Anne Reddington.

5. In their respective cases, the Debtor and the Trustee received authority to engage the services of a real estate broker in order to sell the Property.

6. Debtor's spouse, have received an offer, a copy of which is annexed hereto as Exhibit A, from George Katis, Manager of SRP 310 Western Ave, LLC, in the amount of $1,500,000. Neither Mr. Katis nor the LLC have any relationship to the Debtor.

7. The Property has been marketed for over a year prior to and during the pending bankruptcy cases.

8. The highest offers received by the Trustee and the Debtors has been $1,500,000 while

there have been other offers in lesser amounts.

9. The Debtor scheduled the Property (which actually consists of two parcels with buildings thereon) at a combined value of $1.7 million, but that was an estimate by the Debtor. The Property was listed at an asking price of $1.8 million, but no offers were received at that price.

10. The Trustee, the Debtor and the real estate broker for both believe that the offer of $1.5 million is the likely fair market value of the Property.

11. The notice of sale will be served on all creditors listed by the Debtor and other parties in interest who have requested notice, and parties regarded by the Debtor as potential purchasers, and will give all such parties the opportunity to object, file counteroffers, and/or to make their liens known.

12. As of this date, to the Debtor's knowledge and belief, the parties with potential secured claims and/or liens against the Property are U.S. Bank National Association (CLC Consumer Services), GMAC Mortgage, New York Community Bank and the City of Cambridge.

13. The Property has been on the market for about four months, and the offer for the proposed sale represents the highest offer received. The Debtor and the Trustee have determined that a public auction, with attendant costs of sale and auctioneer's fees, would yield a lower net return to the estate. Therefore, the Debtor and the Trustee believe that the proposed private sale with the ability to solicit higher offers and attendant competitive bidding, is in the best interests of both estates.

14. Notice to parties in interest will include the date of the hearing on this motion and the time within which objections may be filed and served on the Debtor and the Trustee.

Any interest in the Property, when established, shall attach to the proceeds realized from the sale of the Property, subject to a determination by the Bankruptcy Court as to the priority, validity and amount of such interest.

**WHEREFORE,** Michael R. Reddington, the Debtor-in-Possession in the above-captioned bankruptcy proceedings, requests that this Honorable Court issue an order allowing the Debtor's Motion to Sell Real Property of the Estate Free and Clear of Liens, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,
MICHAEL R. REDDINGTON
By his attorney,

/s/ Thomas J. Raftery
Thomas J. Raftery, BBO: 410740
Raftery Law Offices
Post Office Box 812
North Chatham, MA 02650
Email: Thomas@Raftery.com
Dated: April 4, 2012                    (888) 472-0008

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

In re:

**MICHAEL R. REDDINGTON**
Debtor

Chapter 11
Case No. 11-19487-JNF

**NOTICE OF INTENDED PRIVATE SALE OF REAL PROPERTY,
SOLICITATION OF COUNTEROFFERS,
DEADLINE FOR SUBMITTING OBJECTIONS AND HIGHER OFFERS;
AND HEARING DATE**

_____IS THE DATE OF HEARING ON THE PROPOSED SALE

_____IS THE DATE BY WHICH OBJECTIONS OR
COUNNTEROFFERS MUST BE MADE

     **NOTICE** is hereby given, pursuant to 11 U.S.C. Section 363, Fed. R. Bank. P. 2002 (a)(2) and 6004, and MLBR 2002-5 and 6004-1, that Michael R. Reddington, Debtor-in-Possession in the above-referenced Chapter 11 bankruptcy proceedings, together with Lynne F. Riley, Chapter 7 Trustee of the estate of Anne Reddington, Case No. 11-12446-JNF, intends to sell free and clear of liens and interests, the respective estates' interests in and to real property located at 304-310 Western Ave, Cambridge, MA 02139 ("Property").  Any perfected, enforceable valid liens and encumbrances shall attach to the proceeds of the sale according to priorities established by applicable law.

     The Debtor has received an offer to purchase the Property for One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) from the proposed buyer, George Katis, Manager of SRP 310 Western Ave, LLC.  On information and belief, there is no relationship between the Debtor and the proposed buyer.

     The terms and conditions of the sale are described in the attached Purchase and Sale Agreement ("P&S Agreement") between the Trustee and the Debtor and the proposed buyer, attached hereto as <u>Exhibit A,</u> as well as the following:

1.    <u>Purchase Price/Proposed Purchaser</u>: The estate's interest in the Property shall be sold to George Katis, Manager of SRP 310 Western Ave, LLC ("Buyer"), for the sum of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00).

2.    <u>Contingencies</u>: The proposed private sale is contingent upon Bankruptcy Court approval of this Notice of Sale, and upon entry of a final order approving the sale.

3. <u>Time of Closing</u>:  A sale of the Property shall take place on **April 30, 2012**, or within 10 days following bankruptcy court approval of the sale, whichever is later, or as otherwise agreed upon in writing between the Trustee and the Debtor and the Buyer or successful bidder, as determined by bankruptcy sale procedures and dates.

4. <u>Other Terms of Proposed Sale</u>:  Terms of the proposed sale are also described in the attached P&S Agreement, and in the Trustee's Motion to Sell Personal Property of the Estate Free and Clear of Liens and Interests ("Motion to Approve Sale") filed with the Court on April 4, 2012.  The Motion to Approve Sale is being served together with this Notice, and both are available at no charge upon request from the undersigned.

5. <u>No Representations or Warranties</u>:  The Trustee and the Debtor shall sell the Property "as is" and "where is" without any representations or warranties of any kind, except as expressly stated in the P&S Agreement.

6. <u>Counteroffers and/or Objections</u>:  This notice is given in order to allow parties to file objections and/or to make counteroffers.  Objections and/or higher offers shall be filed in writing with the Clerk, United States Bankruptcy Court, John. W. McCormack Post Office and Court House, 5 Post Office Square, Suite 1150, Boston, MA 02109-3945, on or before _____ at 4:30 p.m. ("Objection/Counteroffer Deadline").  A copy of any objection or higher offer also shall be served upon the undersigned.  Any objection to the sale must state with particularity the grounds for the objection and why the intended sale should not be authorized.  Any objection to the sale shall be governed by Fed. R. Bankr. P. 9014.

   **Through this Notice, higher offers for the Property are hereby solicited. Counteroffers must be for an amount not less than $1,575,000.00 (5% above proposed purchase price), and must be accompanied by a deposit of $50,000, by cashier's check or certified check payable to the order of and must be forwarded to <u>Lynne F. Riley, Trustee</u>, at Riley Law Group LLC, 100 Franklin Street, Boston, MA 02110, 617-399-7300, and not to the Court.  Higher offers must be on the same terms and conditions provided in the P&S Agreement, other than the purchase price.**

7. <u>Hearing</u>:  A hearing on the Motion to Approve Sale, objections or higher offers is scheduled to take place on _____ at _____ AM/PM before the Honorable Joan N. Feeney, United States Bankruptcy Judge, at the United States Bankruptcy Court, McCormack Building, 5 Post Office Square, 12th Floor, Boston, Massachusetts.  Any party who has filed an objection or higher offer is expected to be present at the hearing, failing which the objection will be overruled and/or the higher offer stricken.  The Court may take evidence at any hearing on approval of the sale to resolve issues of fact.  If no objection to the Motion to Approve Sale or higher offer is timely filed, the Bankruptcy Court, in its discretion, may cancel the scheduled hearing and approve the sale without a hearing.

   At the hearing on the sale the Court may (i) consider any requests to strike a higher offer, (ii) determine further terms and conditions of the sale, (iii) determine the requirements for

    further competitive bidding, and (iv) require one or more rounds of sealed or open bids from the original offeror and any other qualifying offeror.

8. <u>Default</u>:  Any successful bidder who fails to complete the transaction by paying the balance of such bid in cash, bank check, or certified check at the time of closing shall forfeit the deposit and be liable to the estate for the difference between the successful bid and the amount ultimately received from the sale of the Property, unless the Trustee, in her sole discretion, otherwise extends the terms of this Notice.  **Upon default by the successful bidder, the Trustee reserves the right to sell the Property to the second highest bidder, and if the second highest bidder declines, to successively lower bidders until acceptance, without the need for further Court approval.**  A party offering a final high bid that does not complete the sale may also be subject to other appropriate remedies as the Court may impose.

9. <u>Jurisdiction</u>:  The Bankruptcy Court shall retain jurisdiction as to any disputes and adjustments to the purchase price.

10. <u>Inquiries</u>:  Any questions concerning the sale of the Property or the foregoing terms and conditions should be directed to the undersigned Debtor.

    Respectfully submitted,
    MICHAEL R. REDDINGTON
    By his attorney,

    /s/ Thomas J. Raftery
    Thomas J. Raftery, BBO: 410740
    Post Office Box 812
    North Chatham, MA 02650
    Email: Thomas@Raftery.com
Dated: April 4, 2012    (888) 472-0008



EXHIBIT A

## GREATER BOSTON REAL ESTATE BOARD

## STANDARD FORM PURCHASE & SALE AGREEMENT

From the Office of: Remax Leading Edge
319 Massachusetts Ave.
Arlington, MA 02476

1. **PARTIES AND MAILING ADDRESSES** (fill in)

   This _____27th_____ day of _____March_____, 20_12_.
   Lynne Riley, Trustee, 100 Franklin St., Boston, MA 02110
   ~~XXX XXXXXX XXXXXX XXXX XXX XXXXXXX XXXXXXXXX~~ Michael R. Reddington
   hereinafter called the SELLER, agrees to SELL and
   George Katis, Manager of SRP 310 Western Ave, LLC
   720 Massachusetts Ave, Cambridge, MA 02139
   hereinafter called the BUYER or PURCHASER, agrees to BUY, upon the terms hereinafter set forth, the following described premises:

2. **DESCRIPTION** (fill in and include title reference)

   304-310 Western Avenue
   Cambridge, MA 02139
   A six family dwelling, sold "as is"

3. **BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES** (fill in or delete)

   Included in the sale as a part of said premises are the buildings, structures, and improvements now thereon, and the fixtures belonging to the SELLER and used in connection therewith including, if any, all wall-to-wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants and, ONLY IF BUILT IN, refrigerators, air conditioning equipment, ventilators, dishwashers, washing machines and dryers; and

   but excluding all tenants personal possessions

4. **TITLE DEED** (fill in)
   *Include here by specific reference any restrictions, easements, rights and obligations in party walls not included in (b), leases, municipal and other liens, other encumbrances, and make provision to protect SELLER against BUYER's breach of SELLER's covenants in leases, where necessary.*

   Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven _____ days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except
   a. Provisions of existing building and zoning laws;
   b. Existing rights and obligations in party walls which are not the subject of written agreement;
   c. Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;
   d. Any liens for municipal betterments assessed after the date of this agreement;
   e. Easements, restrictions and reservations of record, if any, so long as the same do not prohibit or materially interfere with the current use of said premises;
   'f.

5. **PLANS**

   If said deed refers to a plan necessary to be recorded therewith the SELLER shall deliver such plan with the deed in form adequate for recording or registration.

6. **PURCHASE PRICE** (fill in) space is allowed to spell out the amounts if desired

   The agreed purchase price for said premises is $   1,500,000.00
   One million five hundred thousand
                                                                                              dollars, of which
   $     45,000.00  have been paid as a deposit this day and
   $
   $  1,455,000.00  are to be paid at the time of delivery of the deed in cash, or by certified, cashier's check(s), or Attorney's IOLTA check Drawn on a M.A. bank
   $
   _____
   $  1,500,000.00  TOTAL

© 1979-2005 GREATER BOSTON REAL ESTATE BOARD All rights reserved.
Form ID: RA700 PD: 03/05                                   Page 1 of 4
Form generated by: TrueForms™    www.TrueForms.com    800-494-9612

 

7. REGISTERED TITLE

In addition to the foregoing, if the title to said premises is registered, said deed shall be in form sufficient to entitle the BUYER to a Certificate of Title of said premises, and the SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title.

8. TIME FOR PERFORMANCE; DELIVERY OF DEED (fill in)

Such deed is to be delivered at ___3___ o'clock ☐ am ☒ pm on the 30th day of ___April___ 20_12_, at the Middlesex Registry of Deeds

Registry of Deeds, unless otherwise agreed upon in writing. It is agreed that time is of the essence of this agreement.

9. ~~POSSESSION and~~ CONDITION of PREMISE (attach a list of exceptions, if any)

~~Full possession of said premises free of all tenants and occupants,~~ except as herein provided, is to be delivered at the time of the delivery of the deed, said premises to be then (a) in the same condition as they now are, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with the provisions of any instrument referred to in clause 4 hereof. The BUYER shall be entitled personally to enter said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause.

10. EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM (Change period of time if desired).

If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of the delivery of the deed the premises do not conform with the provisions hereof, then ~~any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto, unless~~ the SELLER SHALL use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty _____ days.

11. FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc.

If at the expiration of the extended time the SELLER shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto.

12. BUYER's ELECTION TO ACCEPT TITLE

The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the SELLER shall, unless the SELLER has previously restored the premises to their former condition, either
   a. pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, less any amounts reasonably expended by the SELLER for any partial restoration, or
   b. If a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by the SELLER for any partial restoration.

13. ACCEPTANCE OF DEED

The acceptance of a deed by the BUYER or his nominee, as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed.

14. USE OF MONEY TO CLEAR TITLE

To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed.

Page 2 of 4

Form generated by TrueForms   www.TrueForms.com   800-499-9612

| | |
|---|---|
| 15. INSURANCE<br>*Insert amount (list additional types of insurance and amounts as agreed) | Until the delivery of the deed, the SELLER shall maintain insurance on said premises as follows:<br>Type of Insurance    Amount of Coverage<br>a. Fire & Extended Coverage    *$<br>b. As presently insured    *$<br>c.    *$ |
| 16. ADJUSTMENTS<br>(list operating expenses, if any, or attach schedule) | Collected rents, ~~mortgage interest,~~ water and sewer use charges, ~~operating expenses (if any) according to the schedule attached hereto or set forth below,~~ and taxes for the then current fiscal year, shall be apportioned and fuel value shall be adjusted, as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed. Uncollected rents for the current rental period shall be apportioned if and when collected by either party. |
| 17. ADJUSTMENT OF UNASSESSED AND ABATED TAXES | If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless otherwise herein agreed. |
| 18. BROKER's FEE<br>(fill in fee with dollar amount or percentage; also name of Brokerage firm(s)) | A Broker's fee for professional services of _____ 3% _____ is due from the SELLER to _____ Remax Leading Edge and Bayside Realty _____<br>the Broker(s) herein, but if the SELLER pursuant to the terms of clause 21 hereof retains the deposits made hereunder by the BUYER, said Broker(s) shall be entitled to receive from the SELLER an amount equal to one-half the amount so retained or an amount equal to the Broker's fee for professional services according to this contract, whichever is the lesser. |
| 19. BROKER(S) WARRANTY<br>(fill in name) | The Broker(s) named herein _____ Colleen Sleeper and Mohammad Nooronzi _____ warrant(s) that the Broker(s) is (are) duly licensed as such by the Commonwealth of Massachusetts. |
| 20. DEPOSIT<br>(fill in name) | All deposits made hereunder shall be held in escrow by _____ Lynne Riley, Trustee _____ as escrow agent subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement. In the event of any disagreement between the parties, the escrow agent may retain all deposits made under this agreement pending instructions mutually given in writing by the SELLER and the BUYER. |
| 21. BUYER's DEFAULT; DAMAGES | If the BUYER shall fail to fulfill the BUYER's agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages ~~unless within thirty days after the time for performance of this agreement or any extension hereof, the SELLER otherwise notifies the BUYER in writing.~~ *AND THIS SHALL BE SELLERS SOLE REMEDY AT LAW AND IN EQUITY* |
| 22. RELEASE BY HUSBAND OR WIFE | The SELLER's spouse hereby agrees to join in said deed and to release and convey all statutory and other rights and interests in said premises. |
| 23. BROKER AS PARTY | The Broker(s) named herein join(s) in this agreement and become(s) a party hereto, insofar as any provisions of this agreement expressly apply to the Broker(s), and to any amendments or modifications of such provisions to which the Broker(s) agree(s) in writing. |
| 24. LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc. | If the SELLER or BUYER executes this agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder. |
| 25. WARRANTIES AND REPRESENTATIONS<br>(fill in) if none, state "none"; if any listed, indicate by whom each warranty or representation was made | The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s): |

| | |
|---|---|
| 26. CONTINGENCY CLAUSE (omit if not provided for in Offer to Purchase) | In order to help finance the acquisition of said premises, the BUYER shall apply for a conventional bank or other institutional mortgage loan of $ \_\_\_\_\_ Cash Offer \_\_\_\_\_ at prevailing rates, terms and conditions. If despite the BUYER's diligent efforts a commitment for such loan cannot be obtained on or before \_\_\_\_\_ N/A \_\_\_\_\_, the BUYER may terminate this agreement by written notice to the SELLER and/or the Broker(s), as agent(s) for the SELLER, prior to the expiration of such time, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. In no event will the BUYER be deemed to have used diligent efforts to obtain such commitment unless the BUYER submits a complete mortgage loan application conforming to the foregoing provisions on or before \_\_\_\_\_ N/A \_\_\_\_\_. |
| 27. CONSTRUCTION OF AGREEMENT | This instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be cancelled, modified or amended only by a written instrument executed by both the SELLER and the BUYER. If two or more persons are named herein as BUYER their obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent of the parties to it. |
| 28. LEAD PAINT LAW | The parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age. |
| 29. SMOKE/CO DETECTORS | The SELLER shall, at the time of the delivery of the deed, deliver a certificate from the fire department of the city or town in which said premises are located stating that said premises have been equipped with approved smoke and carbon monoxide detectors in conformity with applicable law. In the event the premises are exempted from the statute governing installation of co detectors, the SELLER shall provide satisfactory evidence of such exemption. |
| 30. ADDITIONAL PROVISIONS | The initialed riders, if any, attached hereto, are incorporated herein by reference. Subject to Bankruptcy Court sale procedures and approval; including potential higher offers. No finance or inspection contingency. All units are tenancy at will. *SEE RIDER A ATTACHED HERETO AND INCORPORATED HEREIN.* |

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE SIGNED LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney.

SELLER: _____   BUYER: _____
Print Name: Lynne Riley, Trustee      Print Name: George Katis, Manager
Taxpayer ID/Social Security No. ___   Taxpayer ID/Social Security No. SRP 310 Western Ave, LLC

SELLER (or Spouse): _____   BUYER: _____
Print Name: Thomas Raftery, Trustee   Print Name: _____
Taxpayer ID/Social Security No. ___   Taxpayer ID/Social Security No. ___

BROKER(S)                              BROKER(S)

Page 4 of 4

Form generated by TrueForms   www.TrueForms.com   800-499-9612

p.4

26. **CONTINGENCY CLAUSE**
(omit if not provided for in Offer to Purchase)

In order to help finance the acquisition of said premises, the BUYER shall apply for a conventional bank or other institutional mortgage loan of $ ___Cash Offer___ at prevailing rates, terms and conditions. If despite the BUYER's diligent efforts a commitment for such loan cannot be obtained on or before _____N/A_____, the BUYER may terminate this agreement by written notice to the SELLER and/or the Broker(s), as agent(s) for the SELLER, prior to the expiration of such time, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement be void without recourse to the parties hereto. In no event will the BUYER be deemed to have used diligent efforts to obtain such commitment unless the BUYER submits a complete mortgage loan application conforming to the foregoing provisions on or before _____N/A_____.

*[Clause struck through]*

27. **CONSTRUCTION OF AGREEMENT**

This Instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed Instrument, sets forth the entire contract between the parties, is binding upon and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be cancelled, modified or amended only by a written Instrument executed by both the SELLER and the BUYER. If two or more persons are named herein as BUYER their obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent of the parties to it.

28. **LEAD PAINT LAW**

The parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age.

29. **SMOKE/CO DETECTORS**

The SELLER shall, at the time of the delivery of the deed, deliver a certificate from the fire department of the city or town in which said premises are located stating that said premises have been equipped with approved smoke and carbon monoxide detectors in conformity with applicable law. In the event the premises are exempted from the statute governing installation of co detectors, the SELLER shall provide satisfactory evidence of such exemption.

30. **ADDITIONAL PROVISIONS**

The initialed riders, if any, attached hereto, are incorporated herein by reference.
Subject to Bankruptcy Court sale procedures and approval; including potential higher offers.
No finance or inspection contingency.
All units are tenancy at will.

SEE RIDER A ATTACHED HERETO AND INCORPORATED HEREIN.

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE SIGNED LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney.

SELLER: *[signature]* Trustee
Print Name: Lynne Riley, Trustee
Taxpayer ID/Social Security No. _____

SELLER (or Spouse): *[signature]* MICHAEL REDDINGTON
Print Name: Thomas Raftery, Trustee
Taxpayer ID/Social Security No. _____

BUYER: _____
Print Name: George Katis
Taxpayer ID/Social Security No. _____

BUYER: _____
Print Name: _____
Taxpayer ID/Social Security No. _____

BROKER(S)

BROKER(S)

Page 4 of 4

Form generated by "TrueForms"    www.TrueForms.com    800-499-9612

## RIDER A TO PURCHASE AND SALE AGREEMENT

1. Seller shall allow Buyer access to the premises for inspection and measurements at reasonable times and upon reasonable notice, provided that such access shall be in the presence of Seller or Seller's Agent.

2. Any and all notices which may be given or required hereunder may be either mailed by certified mail, return receipt requested, delivered in hand, delivered by overnight carrier such as Federal Express, or faxed as follows:

   to the Seller c/o

   to the Buyer c/o
   William J. Gosz, Esq.
   William J. Gosz, P.C.
   130 Bishop Allen Drive
   Cambridge, MA 02139
   TEL: (617) 245-2935 Ex.1
   FAX: (888) 506-3251
   Email: wgosz@goszlaw.com

3. Seller or Seller's agent under a written Power of Attorney agrees to deliver to the Buyer such affidavits, documents and certificates as may be customarily requested by the Buyer's mortgagee, its attorney, or Buyer's attorney, including the following: (i) an affidavit to Buyer and Buyer's title insurance company certifying that there are no parties in possession of the premises other than any current tenants, that all municipal liens including water, sewer and electricity have been paid, and that no work has been done on the premises which would entitle anyone to claim a mechanic's or materialmen's lien with respect to the premises; (ii) Internal Revenue Code, Section 1099B Form and W-9 Form; (iii) an affidavit that there is no urea formaldehyde foam insulation on or in the premises; and (iv) certifying as to the financial terms of the Purchase and Sale Agreement.

4. Seller warrants and represents to Buyer that Seller is not a "foreign person" as defined by the federal Foreign Investment in Real Property Tax Act (the "Act"). At closing, Seller shall execute and deliver to Buyer a "non-foreign certificate". Seller acknowledges that if the Seller fails to deliver a completed non-foreign certificate, then Buyer shall be authorized to withhold from the closing proceeds an amount equal to ten (10%) percent of the gross amount to the Internal Revenue Service, as required by the Act. Seller does hereby forever release and discharge Buyer from all liability resulting from, or arising out of, Buyer's good faith compliance with the requirements of the Act.

5. The deposits (which term shall include all interest earned, if any) made hereunder shall be held in escrow, subject to the terms of this Agreement and shall be duly accounted for at the time for performance of this Agreement. The deposits may not be released from escrow without the assent of both Buyer and Seller or pursuant to a court order. The recording of the deed to the Premises shall constitute such assent. So long as Escrow Agent served in good faith, Buyer and Seller shall agree to hold harmless the Escrow Agent from damages,

losses or expenses, arising out of this Agreement or any action or failure to act, including reasonable attorney's fees, related thereto.

6. Any matter which is the subject of a Title Standard or Practice Standard of the Real Estate Bar Association at the time of delivery of the Deed shall be governed by said Title Standard or Practice Standard to the extent applicable.

7. Buyer's obligations hereunder are contingent upon the availability (at normal premium rates) of an owner's title insurance policy without exceptions other than the standard printed exceptions contained in the ALTA form currently in use, and those exceptions set forth in Paragraph 4 of this Agreement.

8. It is understood and agreed by the parties that the premises shall be in compliance with the provisions of this Agreement only if:

   a) All buildings, structures and improvements, including but not limited to, any driveways, garages, septic systems and cesspools, and all means of access to the premises, shall be located completely within the boundary lines of said premises and shall not encroach upon or under the property of any other person or entities;

   b) No building, structure or improvement of any kind belonging to any other person or entity shall encroach upon or under said premises;

   c) The premises shall abut a public way or a private way to which Buyer shall have both pedestrian and vehicular access, and if a private way, that such private way in turn has satisfactory access to a public way; which public way is duly laid out or accepted as such by the City or Town where the premises are located.

   d) The premises are not located within a HUD Flood Hazard Zone requiring the Buyer's purchase of Flood Insurance, or within any locally designated wetlands area.

   e) The premises are equipped with all necessary utilities, including without implied limitation, electricity, gas, telephone, cable television, private or municipal water, public sewer or septic tank.

   f) The premises are served by municipal water, or, if not, by a private well, the quantity and quality of the water furnished thereby is potable and adequate to serve a single-family residence.

   g) The premises are serviced by a municipal sewer system, or, if not, the septic system for the premises lies wholly within the boundaries of the premises and complies with Title 5 of the Massachusetts Environmental code.

   h) No electric power lines are located or may by right be located on, over or under the premises excepting such power liens that provide electricity service only to the premises.

9. This agreement supersedes all prior agreements and other understandings between the parties and represents the complete and full agreement of the parties hereto except as this Agreement is modified or altered by written agreement signed by the parties hereto. All prior offers and agreements between the parties with respect to the transactions contemplated hereby and any such prior offers or agreements shall be null and void.

10. This Agreement is contingent upon Seller receiving a final order of the court authorizing the sale of the premises free and clear of all liens of Seller, approving the disbursement of proceeds, closing costs, and payment of real estate brokers' fees.

11. The current rent roll is as follows:

| Address | Rent | Tenant | Lease |
|---|---|---|---|
| 304 Western Ave | 1200.00 | Dufour/Gallagher | TAW |
| 306 Western Ave | 1200.00 | Sullivan | TAW |
| 306 Western Ave | 1300.00 | DiPietro/Gaston | TAW |
| 308 Western Ave | 1200.00 | Golubitsky/Winguard | TAW |
| 308 Western Ave | 1320.00 | Kampos/Canfield | TAW |
| 310 Western Ave | 1300.00 *Vacant* | Shauffer | TAW |

_____  
Seller  
SS#

_____  
Buyer  
SS#

_____  
Seller  
SS#

_____  
Buyer  
SS#

9. This agreement supersedes all prior agreements and other understandings between the parties and represents the complete and full agreement of the parties hereto except as this Agreement is modified or altered by written agreement signed by the parties hereto. All prior offers and agreements between the parties with respect to the transactions contemplated hereby and any such prior offers or agreements shall be null and void.

10. This Agreement is contingent upon Seller receiving a final order of the court authorizing the sale of the premises free and clear of all liens of Seller, approving the disbursement of proceeds, closing costs, and payment of real estate brokers' fees.

11. The current rent roll is as follows:

| Address | Rent | Tenant | Lease |
|---|---|---|---|
| 304 Western Ave | 1200.00 | Dufour/Gallagher | TAW |
| 306 Western Ave | 1200.00 | Sullivan | TAW |
| 306 Western Ave | 1300.00 | DiPietro/Gaston | TAW |
| 308 Western Ave | 1200.00 | Golubitsky/Winguard | TAW |
| 308 Western Ave | 1320.00 | Kampos/Canfield | TAW |
| 310 Western Ave | ~~1300.00~~ Vacant | Shauffer | TAW |

_____        _____
Seller                                                        Buyer
SS#                                                           SS#

_____        _____
Seller                                                        Buyer
SS#                                                           SS#

p.8

## RIDER B

Seller hereby authorizes conveyancing Attorney to obtain payoff information from Sellers Mortgagee(s) or other security holder(s) listed below and in connection therewith hereby authorizes any equity mortgage lender to freeze the equity account. In the event closing does not take place, the Buyer or its attorney will authorize lender to free-up the account.

The Seller hereby authorizes the mortgagee(s), upon receipt of the payoff funds, to close the account and forward a discharge of the mortgage in accordance with the instructions provided with the payoff check.

| Mortgages(s) | 1st mortgage | 2nd mortgage | other |
|---|---|---|---|
| Name of Institution: | | | |
| Address: | | | |
| Telephone number: | | | |
| Account Number: | | | |

_____
Seller
SS#

_____
Seller
SS#