**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | |
| **MICHAEL R. REDDINGTON,** | Case No. 11-19487-JNF |
| | Chapter 11 |
| Debtor | |

**DEBTOR'S PLAN OF REORGANIZATION**

Michael R. Reddington, the Debtor and Debtor-in-Possession (hereinafter "Debtor"), hereby proposes the following Chapter 11 Plan of Reorganization (the "Plan") to his creditors pursuance to Section 1121(a) of Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1121(a)) (the "Bankruptcy Code").

**1. DEFINITIONS**

1.1    *Administrative Claim* shall mean the costs and expenses of administration of the Chapter 11 case as allowed under Section 503(b) of the Code, including, without limitation, any actual, necessary costs and expenses of preserving or operating the Debtor's estate, and all allowances of compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Section 330 of the Code, 11 U.S.C. § 330.

1.2    *Allowed Claim* shall mean any Claim proof which was filed on or before the Bar Date, or that has been, or hereafter is, listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or an order of the Court, or as to which any objection has been determined by an order or judgment that is no longer subject to appeal or certiorari proceeding, and as to which no appeal or certiorari proceeding is pending, after giving effect to any such order or judgment reducing or modifying such Claim. Unless other specified and in accordance with applicable laws, no allowed secured Claim shall include any component of interest on the principal amount of such Claim, as the Debtor is insolvent.

1.3    *Bar Date* shall mean the last day for filing claims in this proceeding, fixed by this Court pursuant to Rule 3003(c)(3) of the Rules of Bankruptcy Procedure. The Bar Date was set in this case as February 1, 2012.

1.4    *Claim* shall mean any claim of whatever character against the Debtor, whether or not such claim is: provable under Section 502 of the Bankruptcy Code; reduced to judgment; liquidated or unliquidated; secured or unsecured; fixed or contingent; matured or un-matured; disputed or undisputed; a legal claim or a claim to an equitable remedy for breach of performance, if such breach gives rise to a right to payment.

1.5 *Claimant* shall mean any Person having a Claim against the Debtor that arose on or before the Filing Date or a Claim against the Debtor's estate of a kind of specified in Section 502(g), (h) or (i) of the Code.

1.6 *Priority Claimant* shall mean the holder of an Allowed Priority Claim.

1.7 *Class* shall mean the category of holders of Claims that are substantially similar to the other Claims in such category.

1.8 *Code* means the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and as thereafter amended.

1.9 *Confirmation* shall mean the date on which the Debtor's proposed Plan of Reorganization is confirmed by order of the Bankruptcy Court.

1.10 *Court* shall mean the United States Bankruptcy Court for the District of Massachusetts including the United States Bankruptcy Judge presiding therein.

1.11 *Creditor* shall mean holder of an Allowed Claim.

1.12 *Debtor* shall mean Michael R. Reddington.

1.13 *Disbursing Agent* shall mean William McGowan of Mctaxes, Inc., 80 Copeland Street, Quincy, MA 02169.

1.14 *Effective Date* shall mean not earlier than 30 days following the first business day following the last day on which an appeal from an order of the Court confirming the Debtor's Plan of Reorganization may be taken under applicable law and no such appeal has been taken or, if any appeal has been taken, the first business day following the date upon which all appeals have been exhausted and the Plan may be put into effect, whichever is later. For purposes of distribution other than to creditors who have received payment of Adequate Protection during the pre-confirmation period, the phrase "paid upon the Effective Date" shall mean on the Effective Date or within a reasonable period thereafter so as to allow the writing and mailing of dividend checks. For the creditors who have received payment of Adequate Protection, monthly debt service shall commence on the 5th day of the first month following the payment of the final Adequate Protection which occurred before the last day on which an appeal from an order of the Court confirming the Debtor's Plan of Reorganization may be taken under applicable law and no such appeal has been taken or, if any appeal has been taken, the first business day following the 5th day of the month after all appeals have been exhausted and the Plan may be put into effect, which is later. Payment of Adequate Protection shall not be suspended during the appeal period.

1.15 *Executory Contract* shall mean any pre-petition executory contract or unexpired leases of the Debtor within the meaning of Section 365 of the Bankruptcy Code.

1.16 *Fair Market Value* shall mean the most probable price, as of a specified date, in cash, or in terms equivalent to cash, or in other precisely revealed terms for which the specified property right should sell after reasonable exposure in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under undue duress.

1.17 *Filing Date* shall mean October 4, 2011, the date on which the Debtor filed the voluntary petition.

1.18 *Final Order* shall mean an order judgment or decree of the Bankruptcy Court, which order shall not have been reversed, stayed, modified or amended and the time to appeal or to seek review or rehearing of such order shall have expired and which shall have become final in accordance with Rule 8002 of the Rules of Bankruptcy Procedure and any applicable local procedural rule.

1.19 *Lien* shall mean any charge against or interest in property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, and statutory lien as defined in 11 U.S.C. Section 101.

1.20 *Liquidation Value* shall mean the price that an owner is compelled to accept when a property must be sold without reasonable market exposure or sale in the ordinary course such as at a foreclosure sale.

1.21 *Plan* shall mean this Plan of Reorganization, either in its present form or as it may be amended from time to time.

1.22 *Pro Rata* shall mean the same proportion that a Claimant in a particular Class bears to the aggregate amount of all Claims in that Class.

1.23 *Secured Claim* shall mean any Allowed Claim with respect to which a Security Interest is held in or against any property of the Debtor's estate, to the extent of the value of such Creditor's Interest in the estate's interest in such property. If the value of such creditor's interest is less than the amount of the Allowed Claim held by it, then such Creditor shall hold an Unsecured Claim for such deficiency amount.

1.24 *Secured Creditor* shall mean any Creditor holding a Secured Claim.

1.25 *Security Interest* shall mean a lien (as such term is defined in Section 101(31) of the Code) on any property of the Debtor's estate.

1.26   *Unimpaired Creditor* shall mean a Creditor whose interest is not materially and adversely affected by this Plan.  In the event of controversy, the Court shall, after hearing and upon notice, determine whether any Creditor or class of Creditors is an Unimpaired Creditor.

## 2. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

2.1   Secured Claims

    2.1.1   Class 1: Claims of Nationstar Mortgage with Respect to 50 Curtis Road, Milton, MA.  Class 1 consists of the claim of Nationstar Mortgage ("Nationstar") which is secured by a first mortgage upon the property located and known as 50 Curtis Road, Milton, Massachusetts in the amount of $314,930.98.  The property has a fair market value of $360,000 to $400,000. The claim of Nationstar is fully secured. The claim of Nationstar shall be modified as follows: Payment of the secured portion of Class 1 shall be in accordance with existing promissory note from the Debtor to Nationstar, but modified to extend the maturity date of the loan to 30 years from the Effective Date and to add to the principal of the mortgage any arrearage existing as of the Petition Date. Additionally, the Debtor will pay Nationstar to escrow and pay for taxes and insurance. The total monthly payment of $2,502.83 shall be paid directly to Nationstar.  To the extent that any portion of the claims in this class are unsecured, they shall be treated in accordance with the unsecured creditors, including voting rights, as set forth in Class 11 below.  The Class 1 Claim holder shall retain its existing lien to secure the secured portion of its Claim. Upon the Effective Date, the Mortgage of Nationstar shall be deemed modified as set forth herein and the Debtor may record the Confirmation Order to reflect said modification.  The modification shall be in force and the mortgage shall be deemed in good standing upon Confirmation as if there has been no default.  Nationstar shall commence sending monthly statements to the Debtor reflecting the modified payments upon the Effective Date. Class 1 is impaired.

    2.1.2   Class 2: Claims of First Trade Union with Respect to 50 Curtis Road, Milton, MA.  Class 2 consists of the claim of First Trade Union ("FTU") which is secured by a second mortgage upon the property located and known as 50 Curtis Road, Milton, Massachusetts in the amount of $60,667.14.  The property has a fair market value of $360,000 to $400,000 and is subject to the first mortgage held by Nationstar Mortgage described above.  The claim of FTU is fully secured. The claim of FTU shall be modified as follows: Payment of the secured portion of Class 1 shall be in accordance with existing promissory note from the Debtor to Nationstar, modified to extend the maturity date of the loan to 30 years from the Effective Date and to add to the principal of the mortgage any arrearage existing as of the Petition Date. The monthly payment of $60.00 shall be paid directly to FTU.  To the extent that any portion of the claims in this class are unsecured, they shall be treated in accordance with the unsecured creditors, including voting rights, as set forth in Class 11 below.   The Class 2 Claim holder shall retain its existing lien to secure the secured portion of its Claim.  Upon the Effective Date,

the Mortgage of FTU shall be deemed modified as set forth herein and the Debtor may record the Confirmation Order to reflect said modification. The modification shall be in force and the mortgage shall be deemed in good standing upon Confirmation as if there has been no default. FTU shall commence sending monthly statements to the Debtor reflecting the modified payments upon the Effective Date.   Class 2 is impaired.

2.1.3  Class 3: Claims of New York Community Bank with Respect to 515 Pleasant Street, Milton, MA.  Class 3 consists of the claim of New York Community Bank ("NYCB") which is secured by a first mortgage upon the property located and known as 515 Pleasant Street, Milton, Massachusetts in the amount of $427,500. The property has a fair market value of $430,000 to $450,000 and is the Debtor's principal residence.  The claim of NYCB is fully secured. The claim of NYCB shall not be modified, but any arrearage due as of the Petition Date will be paid in sixty (60) equal monthly payments beginning on the Effective Date.  NYCB will escrow for taxes and insurance.  Currently, such escrow totals $675.25 per month. This total monthly payment of $2,232.84 shall be paid directly to NYCB.  To the extent that any portion of the claims in this class are unsecured, they shall be treated in accordance with the unsecured creditors, including voting rights, as set forth in Class 11 below.  The Class 3 Claim holder shall retain its existing lien to secure the secured portion of its Claim.  The note and mortgage of NYCB shall be deemed in good standing upon Confirmation as if there has been no default. Class 3 is impaired.

2.1.4  Class 4: Claims of Nationstar Mortgage with Respect to 209 Athens Street, South Boston, MA.  Class 4 consists of the claim of Nationstar Mortgage ("Nationstar") which is secured by a first mortgage upon the property located and known as 209 Athens Street, South Boston, Massachusetts in the amount of $215,868.18.  The property has a fair market value of $325,000 to $350,000.  The claim of Nationstar is fully secured. The claim of Nationstar shall be modified as follows: Payment of the secured portion of Class 4 shall be in accordance with existing promissory note from the Debtor to Nationstar, but modified to extend the maturity date of the loan to 30 years from the Effective Date and to add to the principal of the mortgage any arrearage existing as of the Petition Date. Additionally, Nationstar will be paid to escrow and pay taxes and insurance. The total monthly payment of $1,534.56 shall be paid directly to Nationstar.  To the extent that there is any portion of the claims in this class are unsecured, they shall be treated in accordance with the unsecured creditors, including voting rights, as set forth in Class 11 below.  The Class 4 Claim holder shall retain its existing lien to secure the secured portion of its Claim.  Upon the Effective Date, the Mortgage of Nationstar shall be deemed modified as set forth herein and the Debtor may record the Confirmation Order to reflect said modification.  The modification shall be in force and the mortgage shall be deemed in good standing upon Confirmation as if there has been no default.  Nationstar shall commence sending

monthly statements to the Debtor reflecting the modified payments upon the Effective Date.   Class 4 is impaired.

2.1.5   Class 5: Claims of Green Tree Servicing, LLC (formerly held by Consumer Services/Credit Suisse) with Respect to 209 Athens Street, South Boston, MA. Class 5 consists of the claim of Green Tree Servicing, LLC ("Green Tree") which is secured by a second mortgage upon the property located and known as 209 Athens Street, South Boston, Massachusetts in the amount of $165,000.  The property has a fair market value of $325,000 to $350,000 and is subject to the first mortgage held by Nationstar Mortgage described above in the amount of approximately $215,000. The claim of Green Tree is secured to the extent of $165,000. The claim of Green Tree shall be modified as follows: Payment of the secured portion of Class 5 shall be in accordance with existing promissory note from the Debtor to Green Tree, but modified to extend the maturity date of the loan to 30 years from the Effective Date and to add to the principal of the mortgage any arrearage existing as of the Petition Date.  The monthly payment of $845.91 shall be paid directly to Green Tree.  The unsecured portion of the claim in this class, if any, shall be treated in accordance with the unsecured creditors, including voting rights, as set forth in Class 11 below.  The Class 5 Claim holder shall retain its existing lien to secure the secured portion of its Claim.  Upon the Effective Date, the Mortgage of Green Tree shall be deemed modified as set forth herein and the Debtor may record the Confirmation Order to reflect said modification.  The modification shall be in force and the mortgage shall be deemed in good standing upon Confirmation as if there has been no default. Green Tree shall commence sending monthly statements to the Debtor reflecting the modified payments upon the Effective Date.  Class 5 is impaired.

2.1.6   Class 6: Claims of FV-I, Inc. in trust for Morgan Stanley Mortgage Capital Holdings LLC (formerly held by Saxon Mortgage Services) with Respect to 268 Spring Street, Block Island, RI.  Class 6 consists of the claim of FV-I, Inc. in trust for Morgan Stanley Mortgage Capital Holdings LLC ("FV-I") which is secured by a first mortgage upon the property located and known as 206 Spring Street, Block Island, RI in the amount of $474,269.82.  The note and mortgage, presumably, had been held by Saxon Mortgage Services, Inc., but during the case were assigned to FV-I.  The property has a fair market value of $1,250,000.  The claim of FV-I is fully secured. The claim of FV-I shall be modified as follows: Payment of the secured portion of Class 6 shall be in accordance with existing promissory note from the Debtor to FV-I, but modified to extend the maturity date of the loan to 30 years from the Effective Date and to add to the principal of the mortgage any arrearage existing as of the Petition Date.  Additionally, FV-I will be paid to escrow and pay taxes and insurance. The monthly payment of $3,026.61 shall be paid directly to Saxon.  To the extent that there is any portion of the claims in this class are unsecured, they shall be treated in accordance with the unsecured creditors, including voting rights, as set forth in Class 11 below.  The Class 6 Claim holder shall retain its existing lien to secure the secured portion of its

Claim.  Upon the Effective Date, the Mortgage of FV-I shall be deemed modified as set forth herein and the Debtor may record the Confirmation Order to reflect said modification.  The modification shall be in force and the mortgage shall be deemed in good standing upon Confirmation as if there has been no default.  FV-I shall commence sending monthly statements to the Debtor reflecting the modified payments upon the Effective Date.  Class 6 is impaired.

2.1.7   **Class 7: Claims of Citibank with Respect to 268 Spring Street, Block Island, RI.**  Class 7 consists of the claim of Citibank ("Citibank") which is secured by a second mortgage upon the property located and known as 268 Spring Street, Block Island, RI in the amount of $500,000. The property has a fair market value of $1,250,000.   The claim of Citibank is fully secured. The claim of Citibank shall be modified as follows: Payment of the secured portion of Class 7 shall be in accordance with existing promissory note from the Debtor to Saxon, but modified to extend the maturity date of the loan to 30 years from the Effective Date and to add to the principal of the mortgage any arrearage existing as of the Petition Date.  The monthly payment of $1,126.43 shall be paid directly to Citibank.  To the extent that there is any portion of the claims in this class are unsecured, they shall be treated in accordance with the unsecured creditors, including voting rights, as set forth in Class 11 below.  The Class 7 Claim holder shall retain its existing lien to secure the secured portion of its Claim.  Upon the Effective Date, the Mortgage of Saxon shall be deemed modified as set forth herein and the Debtor may record the Confirmation Order to reflect said modification.  The modification shall be in force and the mortgage shall be deemed in good standing upon Confirmation as if there has been no default.  Saxon shall commence sending monthly statements to the Debtor reflecting the modified payments upon the Effective Date.
Class 7 is impaired.

2.1.8   **Class 8: Claims of RCS with Respect to 129 Gun Hill Street, Milton, MA**.  Class 8 consists of the claim of RCS ("RCS") which is secured by a first mortgage upon the property located and known as 129 Gun Hill Street, Milton, Massachusetts in the amount of $673,149.78.  The property has a fair market value of approximately $1,200,000.  The claim of RCS is fully secured. The claim of RCS shall be modified as follows: Payment of the secured portion of Class 8 shall be in accordance with existing promissory note from the Debtor to RCS, but modified to extend the maturity date of the loan to 30 years from the Effective Date and to add to the principal of the mortgage any arrearage existing as of the Petition Date. Additionally, RCS will be paid to escrow and pay taxes and insurance. The total monthly payment of $4,586 shall be paid directly to RCS.  To the extent that there is any portion of the claims in this class are unsecured, they shall be treated in accordance with the unsecured creditors, including voting rights, as set forth in Class 11 below.  The Class 8 Claim holder shall retain its existing lien to secure the secured portion of its Claim.  Upon the Effective Date, the Mortgage of RCS shall be deemed modified as set forth herein and the Debtor may record the Confirmation Order to reflect said modification.  The modification shall be in

force and the mortgage shall be deemed in good standing upon Confirmation as if there has been no default.  RCS shall commence sending monthly statements to the Debtor reflecting the modified payments upon the Effective Date.  Class 8 is impaired.

2.1.9   Class 9: Claims of Chase Bank with Respect to 129 Gun Hill Street, Milton, MA. Class 9 consists of the claim of Chase Bank ("Chase") which is secured by a second mortgage upon the property located and known as 129 Gun Hill Street, Milton, Massachusetts in the amount of $497,024.65.  The property has a fair market value of $1,200,000 and is subject to the first mortgage held by RCS described above in the amount of approximately $674,000. The claim of Chase is secured. The claim of Chase shall be modified as follows: Payment of the secured portion of Class 9 shall be in accordance with existing promissory note from the Debtor to Chase, but modified to extend the maturity date of the loan to 30 years from the Effective Date and to add to the principal of the mortgage any arrearage existing as of the Petition Date.  The monthly payment of $1,249 shall be paid directly to Chase.  Any unsecured portion of the claim in this class shall be treated in accordance with the unsecured creditors, including voting rights, as set forth in Class 11 below.   The Class 9 Claim holder shall retain its existing lien to secure the secured portion of its Claim.  Upon the Effective Date, the Mortgage of Chase shall be deemed modified as set forth herein and the Debtor may record the Confirmation Order to reflect said modification.  The modification shall be in force and the mortgage shall be deemed in good standing upon Confirmation as if there has been no default. Chase shall commence sending monthly statements to the Debtor reflecting the modified payments upon the Effective Date.   Class 9 is impaired.

2.1.10  Class 10: City of Boston.  Class 10 consists of statutory claim of the City of Boston through it's the Boston Water and Sewer Commission ("BWSC") for water and sewer services provided to the property at 209 Athens Street, South Boston and to 4191 Washington Street, Roslindale. The BWSC filed a proof of claim asserting that the amount owed was $2,204.34. A reading of the proof of claim indicates that $625.40 was for the services provided to 209 Athens Street while $1,684.87 was for services provided to the Game Day Pub at 4191 Washington Street, Roslindale. The Game Day Pub was a separate legal entity and the latter amount is due from that entity which should have been paid in connection with the sale of the Roslindale real estate upon which the pub and restaurant were located. The Debtor is not liable for the amount due to the BWSC for services to 4191 Washington Street. On the Effective Date, the City of Boston shall be paid $625.40 in full satisfaction of its claim.  Class 10 is impaired.

2.2   Unsecured Claims and Interests

2.2.1   Class 11: Unsecured Claims.  Class 11 consists of all Allowed Unsecured Claims which consists of claims as scheduled or as filed and allowed by the Court, against

the Debtor of whatever kind or nature which are not included in any other Class hereof including:

    2.2.2    Unsecured scheduled and filed claims of approximately $24,047.88;

    2.2.3    under-secured claims of secured creditors set forth above which sums are in the approximate amount of zero; and

    2.2.4    claims based on the rejection of the executory contracts or unexpired leases and claims for damages to person or property based on strict liability, negligence, or breach of a warranty, express or implied, relative to services rendered or products delivered by the Debtor.

Assuming Allowed Unsecured Claims total $24,047.88, holders of the Allowed Unsecured Claims will receive a pro rata distribution 100% of their Claims over the five (5) year payment period, if not before.

    2.2.5    <u>Class 12: The Debtor's Interests</u>.  All of the property of the estate shall vest in the Debtor upon discharge.

## 3. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND FEES OF U.S. TRUSTEE

    3.1    <u>Payment of Administrative Claims</u>. Administrative Claims include post-petition fees and expenses allowed to professionals employed upon Court authority to render services to the Debtor during the course of the Chapter 11 case. Administrative Claims will be paid in cash, in full, on the later of the confirmation of the Plan (the "Effective Date" or "Confirmation") or the date they are allowed by an Order of the Bankruptcy Court.  Ordinary trade and consumer debt incurred by the Debtor in the course of the chapter 11 case will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and his trade and consumer creditors.  The payments contemplated by the Plan will be conclusively deemed to constitute full satisfaction of Allowed Administrative Claims. Administrative Claims include post-petition fees and expenses allowed to professionals employed upon Court authority to render services to the Debtor during the course of the chapter 11 case.

           In this case, the sole legal professional authorized to be employed by the Debtor is Thomas J. Raftery, Raftery Law Offices, as counsel to the Debtor.  In order to be compensated, all professionals will have to apply to the Court for compensation and they will be paid that amount which the Court allows.  It is estimated that administrative fees in the Debtor's case may be approximately $25,000.00 but that is only an estimate by the Debtor and actual fees may be higher than as represented.

3.2  Payment of Tax Claims.  The Allowed Amount of any unsecured claim of a governmental unit entitled to priority under §507(a)(8) of the Code shall be paid on such terms as the Debtor and such governmental unit agree or, failing such agreement prior to confirmation, such claims shall be paid in full as provided in §1129(a)(9)(c) by equal deferred cash payments over a period of five years from the Petition Date such payments to represent both principal and interest at the appropriate rate:

    3.2.1  The Internal Revenue Service ("IRS") has filed a proof of claim in the amount of $80,768.72. The amount paid to the IRS should be offset by the amount of tax refund taken by the IRS post-petition; that refund was approximately $8,000.

    3.2.2  The Commonwealth of Massachusetts ("DOR") has filed a proof of claim in the amount of $16,651.71. There were credits against that amount in connection the sale of real estate of a related debtor, but those credits have not yet been applied.

    3.2.3  As of the Petition Date, the City of Boston has claims for water and sewer charges owed. See Class 10 below.

3.3  Fees of the United States Trustee.  Administrative expenses shall include all quarterly fees owing to the U.S. Trustee (while the case is administratively pending) through the filing of the Application for Final Decree. Pursuant to the provisions of 28 U.S.C. §1930 as amended by Pub.L.No. 104-99 (1996) the Debtor shall provide the United States Trustee with Post-Confirmation monthly operating reports and make quarterly payments of the United States Trustee's fees until the case is closed.  The Debtor will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. §1930(a)(6).  Upon the Effective Date, the Debtor will file a motion to close this Case.  Upon the conclusion of the fifth year of the Plan, the Debtor shall file an Application for Final Decree.

## 4. ALLOWANCE AND DISALLOWANCE OF CLAIMS

4.1  Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

4.2  Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

    4.3    <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## 5. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not otherwise expressly assumed herein. Expressly rejected is a lease entitled "*Lease of Business Establishment, 406 Willard Street, Quincy, MA 02169*," between the Debtor and Quarry Hills Animal Hospital LLC by Judie Paulaiski dated October 18, 2008 and any revisions or amendments thereto. The Debtor does not believe that there are any claims against him under that lease, but to the extent any obligations thereunder are executory, they are rejected under the Plan. Notwithstanding, the Debtor may file a motion or amend this Plan to reject any contracts and leases found to be executory prior to or after Confirmation as provided under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the Bankruptcy Code). Subject to the requirements of Sections 365 of the Bankruptcy Code, all executory contracts or unexpired leases of the Debtor that are not rejected, have not been rejected by order of the Bankruptcy Court, or are not the subject of a motion to reject pending 90 days after the Confirmation Date will be deemed assumed.  If any party to an executory contact or unexpired lease which is deemed assumed pursuant to the Plan objects to such assumption, the Bankruptcy Court may conduct a hearing on such objections on any date which is either mutually agreeable to the parties or fixed by the Bankruptcy Court.  All payments to cure defaults that may be required by Section 365(b)(1) of the Bankruptcy Code will be made by the Debtor.  In the event of a dispute regarding the amount of any such payments or the ability of the Debtor to provide for adequate assurance of future performance, the Debtor will make any payments required by Section 365(b)(1) of the Bankruptcy Code after the entry of a Final Order resolving such dispute.

All proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court within thirty (30) days from and after the date of entry of an order of the Bankruptcy Court approving such rejection or such Claims will be barred.  A creditor whose claims arise from rejection of executory contracts and unexpired leases will be treated as an unsecured creditor.

## 6. MEANS FOR EFFECTUATING THE PLAN

    6.1    <u>Payments Under the Plan</u>.  Prior to the commencement of the hearing(s) on Plan confirmation, the Disbursing Agent (as defined in the Chapter 11 Plan) will receive from the Debtor into the Creditor Distribution Fund an amount equal to $2,625.00 for payments under the Plan to be made on the Effective Date.

           The source of payment in order to have cash on hand at the Effective Date shall be from (i) Debtor's employment income, and (ii) rental income accumulated by the Debtor during the pendency of this Chapter 11 case.  From these sources, the

Debtor currently has approximately $_____ in the DIP Account. The balance of the needed funds will derive from the accumulation of cash flow from the real estate prior to Plan confirmation. These funds will be disbursed by the Disbursing Agent as follows: confirmation. These funds will be disbursed by the Disbursing Agent as follows:

| | |
|---|---:|
| Estimated Administrative Claims[1] | $1,000.00 |
| City of Boston | $625.00 |
| Unsecured Claims Initial Dividend | $1,000.00 |
| Total | $2,625.00 |

Beginning with the month after the Effective Date and quarterly thereafter for five (5) years of the Plan, the Debtor will deposit with the Disbursing Agent $500 per month to be deposited into the Creditor Distribution Fund for distribution to unsecured creditors. From these funds, on behalf of the Debtor, the Disbursing Agent will make the required Post Effective Date payments to unsecured creditors under the Plan on a quarterly basis. The Debtor will pay each holder of an Allowed General Unsecured Claim a Pro Rata Share of $1,000 at the Effective Date. At the end of the five year payment period, the Debtor will have paid General Unsecured Creditors a total of $24,047.88. Assuming Allowed Unsecured Claims total $24,047.88, holders of the Allowed Unsecured Claims will receive a distribution of 100% of their Claims over the five (5) year payment period. The holders of General Unsecured Claims will receive a greater percentage of the Allowed amount than they would under a liquidation. See the Liquidation Analysis attached hereto as Exhibit B. Depending on cash flow, the Debtor may make additional payments to the Disbursing Agent such that the minimum payments under the Plan will be increased thereby decreasing the period in which all payments are paid in full.

The Debtor will be responsible for timely payment of quarterly fees incurred pursuant to 28 U.S.C. 1930(a)(6) until its case is converted to chapter 7, closed or dismissed. After confirmation, the Debtor will serve the United States Trustee with a quarterly disbursement report for each quarter (or portion thereof) so long as the case is and the Debtor will serve the United States Trustee with a monthly financial report for each month (or portion thereof) the case remains open. The monthly financial report shall include the following:

  6.1.1 A statement of all disbursements made during the course of the month, whether or not pursuant to the plan;

  6.1.2 A summary, by class, of amounts distributed or property transferred to

---

[1] The estimated Administrative Claims is more likely $25,000. The Debtor is unlikely to have sufficient cash on hand at confirmation to pay all administrative claims in full. As a result, counsel for the Debtor has agreed to be paid that amount which is allowed by the Court on an instalment basis over a period of three years.

    each recipient under the plan, and an explanation of the failure to make any distributions or transfers of property under the plan;

  6.1.3 Debtor's projections as to its continuing ability to comply with the terms of the plan;

  6.1.4 A description of any other factors which may materially affect the Debtor's ability to consummate the plan; and

  6.1.5 An estimated date when an application for final decree will be filed with the Court (in the case of the final monthly report, the date the decree was filed).

6.2 <u>Exemption from Transfer Taxes</u>.  In accordance with Section 1146(c) of the Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any transfer of assets contemplated by this Plan, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under this Plan, or the vesting, re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in impanation of, or as contemplated by this Plan; (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with this Plan, the issuance, renewal, modification or security of indebtedness by such means, including, without limitation, the recording or filing of any of the documents related to any debt financing; and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp fee, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or government assessment.  Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under this Plan is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deeds stamps, transfer tax, intangible tax or similar tax.

6.3 <u>Execution of Necessary Documents</u>.  Confirmation of this Plan shall constitute authorization for the Debtor and the Reorganized Debtor to execute such documents, instruments and agreements as are necessary to effectuate the terms of this Plan.

6.4 <u>Setoff</u>.  For purposes of determining the availability of the right of set-off under Section 553 of the Code, the Debtor shall be treated as a separate entity so that,

      subject to the other provisions of Section 553 of the Code, debts are due to the Debtor may not be set-off against the debtor of any other debtor.

6.5    Amendment of Documents.  As of the Effective Date, all pre-Confirmation Date documents and agreements (whether written or oral) between the Debtor and any party, including, without limitation, any instruments, contracts, notes, mortgages, deeds of trust, assignments, bills of sale, leases, property settlement agreements and purchase and sale agreements, shall be deemed to be amended as necessary to effectuate and conform to the terms of this Plan.  To the extent that there is any inconsistency between this Plan and any such documents and agreements, the terms of this Plan shall control.

6.6    Preservation of Causes of Action.  Except as provided herein, an unless expressly waived, relinquished, exculpated, released, compromised or settled in this Plan, the Confirmation Order, or in any contract, instrument, release or other agreement entered into delivered in connection with this Plan, the Reorganized Debtor will exclusively retain and may enforce, an the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(A) of the Code, any Claims, demands, rights and causes of action that the Debtor or his Estate may hold against any person or entity.  No preclusion doctrine, including, without limitation, the doctrines of res judicata, colatteral estoppel, issue preclusion, claim preclusion, estoppels (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the confirmation, consummation of effectiveness of this Plan.

## 7. PROVISIONS FOR THE EXECUTION OF THE PLAN

7.1    In order to participate in the distribution under this Plan, a proof of claim must be filed with the Bankruptcy Court on or before the bar date established by the Court unless scheduled by the Debtor as liquidated in amount, not disputed and not contingent in which event the claim will be allowed as scheduled.

7.2    A Chapter 11 Plan of Reorganization by an individual debtor may be modified at any time after confirmation before completion of payments regardless if substantially consummated, for the propose of modifying the amount, duration or distribution of plan payments; 11 U.S.C. §1127(e).

7.3    Debts are discharged under an individual debtor's plan upon order of the Court after all plan payments have been made under 11 U.S.C. §1141(d)(5)(A).

7.4    Debts of an individual debtor may be discharged prior to completion of all plan payments, after notice and hearing, if the value distributed to unsecured creditors is not less than what would be received under Chapter 7, modification of the plan is impracticable and the debtor is not subject to §522(q)(1) nor is there a

proceeding pending in which the debtor could be found guilty of a felony of the kind described in §522(q)(1); 11 U.S.C. §1141(d)(5)(B).

## 8. RETENTION OF JURISDICTION

The Court shall retain jurisdiction of these cases pursuant to the provisions of Chapter 11 of the Code, until the final allowance or disallowance of all claims affected by the Plan, and, in addition shall retain jurisdiction to determine the following matters:

8.1  In order to participate in the distribution under this Plan, a Proof of Claim must have been filed with the Bankruptcy Court on or before the bar date established by the Court unless scheduled by the Debtor as liquidated in amount, not disputed and not contingent in which event the claim will be allowed as scheduled.

8.2  The Plan provides that any and all unexpired leases and executory contracts, which existed as of the commencement of the Chapter 11 case will be accepted if assumed herein on the Confirmation Date except those leases and executory contracts that the Debtor elects to reject. Any person deeming himself injured by such rejection will hold an unsecured Class 11 claim for damages sustained by reasons of the rejection. There are no known leases that shall be rejected in the proceedings.

8.3  The Plan provides the Court's retention of jurisdiction for specified purposes regardless of the entry of a final decree closing the Chapter 11 case.

8.4  The Plan shall provide for the Court's retention of jurisdiction to determine disputes over defaults alleged under the Plan provisions.

8.5  The Court shall retain jurisdiction of these cases pursuant to the provisions of Chapter 11 of the Code, until the final allowance or disallowance of all claims affected by the Plan, and, in addition shall retain jurisdiction to determine the following matters:

   8.5.1  To enable the Debtor to consummate the Plan and to resolve any dispute thereto including those creditors whose claims are scheduled by the Debtor as disputed or which amounts due and payable are disputed;

   8.5.2  To enable the Debtor to consummate any and all proceeding which they may bring prior to the entry of the order of confirmation to set aside liens or encumbrances, and to record any preferences, transfers, assets or damages to which it may be entitled under all applicable provisions of the Code of other federal, state or local law;

   8.5.3  To hear and determine all claims arising from the rejection of any

executory contracts, including leases, and to consummate the rejection of executory contracts rejected hereunder or with respect to which an application for rejection was filed prior to the entry of the order of confirmation;

8.5.4 To liquidate damages in connection with any disputed, contingent or unliquidated claims;

8.5.5 To adjudicate all controversies concerning the classification or allowance of any claims or interest;

8.5.6 To adjudicate all claims including amounts and issues relating to the validity of asserted security interests in any property of the estate including any property transferred hereunder or in any proceeds thereof;

8.5.7 To adjudicate all matters affecting the entry of a final decree closing the Chapter 11 case;

8.5.8 To adjudicate all disputes over defaults alleged under the Plan provisions;

8.5.9 To adjudicate all claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor during the pendency of this Chapter 11 case;

8.5.10 To recover all assets and property of the estate wherever located; and

8.5.11 To make such other as are necessary or appropriate to carry out the provisions of this Plan.

Respectfully submitted,

_____
Michael R. Reddington

MICHAEL R. REDDINGTON
By his attorney

/s/*Thomas J. Raftery*_____
Thomas J. Raftery BBO#410740
P.O. Box 812
North Chatham, MA 02650-0812
(888) 472-0008
Thomas@Raftery.com